MALCOLM S. SEGAL - SBN 075481
JAMES P. MAYO - SBN 169897
SEGAL & KIRBY
770 L Street, Suite 1440
Sacramento, CA 95814
Telephone: (916) 441-0828

Attorneys for Plaintiff
TRADER SPORTS, INC. dba
THE TRADERS

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRADER SPORTS, INC. dba THE TRADERS<br><br>Plaintiff,<br><br>vs.<br><br>ALBERTO GONZALES, Attorney General, United States Department of Justice, CARL J. TRUSCOTT, Director, Bureau of Alcohol, Tobacco, Firearms and Explosives, United States Department of Justice, MARY LERCH, Director of Industry Operations, San Francisco Field Division, Bureau of Alcohol, Tobacco, Firearms and Explosives, United States Department of Justice,<br><br>Defendants.<br>_____ / | CASE NO. C 06-01136 VRW<br><br>**PLAINTIFF/PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS RE PLAINTIFF/PETITIONER'S REQUEST FOR PRODUCTION, SET ONE**<br><br>Date: August 10, 2006<br>Time: 2:00 p.m.<br>Dept: 6<br>Judge: Hon. Vaughn R. Walker |

I.

**INTRODUCTION**

Plaintiff/Petitioner TRADER SPORTS, INC. dba THE TRADERS ("TRADER SPORTS") filed a timely petition for statutory de novo judicial review under 18 U.S.C. § 923(f)(3) and for injunctive and declaratory relief ("the Complaint") against Defendants/Respondents ALBERTO GONZALES, Attorney General, United States Department of Justice; CARL J. TRUSCOTT, Director,

Bureau of Alcohol, Tobacco, Firearms and Explosives, United States Department of Justice ("BATFE"); and, MARY LERCH, then Director of Industry Operations, San Francisco Field Division, BATFE, United States Department of Justice (collectively "defendants"). The Complaint seeks de novo judicial review of a "Final Notice of Denial of Application or Revocation of Firearms License" ("Final Revocation Notice") issued on December 23, 2005 by the BATFE following a BATFE administrative hearing conducted on November 16 and 17, 2004. TRADER SPORTS also separately seeks declaratory and injunctive relief and reinstatement of its federal firearms license which was revoked by Defendants effective June 2, 2006.

In pertinent part, the Complaint seeks reinstatement of TRADER SPORTS' federal firearms license on the grounds the administrative hearing and the resultant Final Revocation Notice are the unlawful product of Defendants' unconstitutional warrantless 2003 inspection of TRADER SPORTS conducted in violation of the "one time in twelve months inspection rule" enacted by Congress and codified at 18 U.S.C. § 923(g)(1)(B)). *Complaint at ¶¶ 18-21, 45-47.* This overarching claim is dispositive of the other claims raised in the Complaint, and TRADER SPORTS will file a narrowly-focused summary judgment motion on this claim on or before September 7, 2006.

As articulated by the Complaint, and evinced by the underlying adminstrative hearing record itself, adjudication of this determinative issue first requires resolution of several predicate issues. Those issues include:

(1) Whether the 2003 inspection of TRADER SPORTS which began on September 2, 2003, was commenced less than twelve months after the prior 2002 inspection had ended (*Complaint at ¶¶ 45-47*);

(2) Whether the inspectors conduct during and after the prior inspection Closing Conference on September 27, 2002, requiring that TRADER SPORTS continue to provide information and documentation, was part of the 2002

inspection process (*Exh. A, Hearing Testimony of Jun Tucay at 261:4-262:4* [testifying the BATFE continued to request a computer inventory print-out at the Closing Conference]);

    (3) Whether it was internal BATFE policy during 2002 and 2003 to calculate the twelve month time period from the date the last inspection ended, not the date the prior inspection commenced (*Exh. A, Hearing Testimony of Jun Tucay at 269:29-270:18, 277:19-278:10*);

    (4) Whether, based on the uncodified Memo dated April 10, 2003 and entitled "*Annual Right of Entry for Federal Firearms Licensee Annual Inspections,*" referenced in the administrative hearing testimony of BATFE Area Supervisor Dennis Anderson and expressly relied upon by the BATFE in its post-hearing brief and by the Hearing Officer in his Report, subsequently adopted in total by the BATFE in the Final Revocation Notice, BATFE's internal inspection policy is entitled to administrative deference as Defendants now contend;[1] and,

    (5) Whether Defendants violated the "one time in twelve months inspection rule" a second time in January 2004 when they requested that the California Department of Justice perform an inspection at Defendants' request less than twelve months after the 2003 inspection had ended (*Complaint at ¶ 58; Exh. F, Reply Declaration of James P. Mayo Re Motion For Preliminary Injunction at ¶¶ 2*).

///

---

[1] *See, Exhs. B, Hearing Testimony of Dennis Anderson at 326:18-327:25* (referencing the Memo and discussing BATFE "internal policy" concerning its interpretation of the statutory "one time in twelve months inspection rule"); *Exh. C, Defendants' Post-Hearing Letter Brief at p. 1, n. 1* (referencing the BATFE Memo); *Exh. D, Hearing Officer's Report at pp. 5 and 30-31* (referencing the BATFE Memo and concluding it "refutes the brief submitted by counsel for the licensee"); *and, Exh. E, Final Revocation Notice at pp. 31-33* (rejecting BATFE Inspector Tucay's hearing testimony and concluding "the Licensee was not inspected more than once in twelve months.")

TRADER SPORTS propounded a Request for Production of Documents on Defendants on May 8, 2006 seeking discovery of documents directly relevant to these issues, and the defenses raised by Defendants, including documents referred to in the adminstrative record exclusively within Defendants' custody, possession, or control, and which have never been produced despite informal request. *Exh. G.* Specifically, the Request for Production sought production of the following documents:[2]

**REQUEST NO. 4:**

All **DOCUMENTS** or **COMMUNICATIONS**, including any diaries kept by BATFE inspectors as referred to in the declarations of Francis Irving, Jun Tucay and Ronald Borg accompanying Defendants' "Opposition to Motion for Preliminary Injunction," any notes taken by BATFE inspectors, and any internal BATFE memoranda or correspondence generated, in connection with the BATFE's inspections of Plaintiff conducted in 2000, 2002, and 2003.[3]

**REQUEST NO. 5:**

All **DOCUMENTS** or **COMMUNICATIONS**, including work schedules or other data, that identify all BATFE personnel present at any time during the on-site inspections of Plaintiff, including closing conferences, conducted in 2000, 2002, and 2003.

///

---

[2] The Request for Production also sought production of documents relevant to TRADER SPORTS' other claims raised in the Complaint, including its claims that it was unfairly singled-out for inspections and audits of its records; that it was not afforded due process to permit a fair and reliable administrative hearing conducted by an impartial, unbiased, and independent decision-maker; and, that the BATFE (then named "BATF") breached a prior agreement in which Defendants agreed not to "threaten, interfere nor directly or indirectly cause the harassment of" TRADER SPORTS. For present purposes, and because Defendants' violation of the "one time in twelve month inspection rule" is dispositive of these other claims, TRADER SPORTS limits its Motion to Compel to the document requests which directly relate to the "one time in twelve month inspection rule."

[3] Copies of the Declarations of Francis Irving, Jun Tucay and Ronald Borg referencing notes and diary entries as filed by Defendants in connection with their "Opposition to Motion for Preliminary Injunction" and which were also made a part of the administrative hearing record as exhibits to Defendants' Post-Hearing Letter Brief are attached to this Motion as Exhibits H, I, and J respectively.

**REQUEST NO. 6:**

All **DOCUMENTS** or **COMMUNICATIONS,** including any BATFE internal memoranda, field training memoranda or other training materials, directives, manuals, or federal registry entries or comments that memorialize or otherwise refer to **YOUR** interpretation or application of the "one time in twelve months inspection rule" enacted by Congress as part of the Firearm Owners' Protection Act and codified at 18 U.S.C. § 923(g)(1)(B)(ii)(I) and 27 C.F.R. § 478.23(b)(2), including a complete copy of the BATFE's Memorandum entitled "Annual Right of Entry for Federal Firearms Licensee Annual Inspection" issued on or about April 10, 2003 by Paul N. Schnabel.

**REQUEST NO. 17:**

All **DOCUMENTS REGARDING** any **COMMUNICATION** between **YOU** and the California Department of Justice, including, but not limited to, any **DOCUMENTS** or **COMMUNICATIONS REGARDING** any request that the Department of Justice perform an on-site inspection of Plaintiff in 2004 or 2006, and any **DOCUMENTS** or **COMMUNICATIONS** in which the results of any Department of Justice inspections of Plaintiff are referenced or discussed.

As directed by the Court at the recent status conference, Defendants served their Response to the Request for Production on July 6, 2006. *Exh. K.* Their boilerplate Response "generally" objects to each of the Requests on the grounds that:

(1) "they purport to impose . . . conditions or establish requirements beyond those required by the Federal Rules of Civil Procedure" – *Response at 2:2-4;*

(2) "they purport to require disclosure of . . . information protected by any applicable privilege, including without limitation, the attorney client privilege, work product, and law enforcement privilege" – *Response at 2:5-7;*

(3) they seek "the disclosure of information or records subject to the Privacy Act, 5 U.S.C. § 552a, including without limitation personal information relating to defendants' employees" – *Response at 2:8-10;* and,

(4) "they purport to require responses extending beyond the time period relevant to Plaintiff's complaint or are otherwise not reasonably calculated to lead to the discovery of evidence relevant to the subject matter of plaintiff's complaint – *Response at 2:11-14.*

5

Plaintiff's Memorandum of Points and Authorities Re Motion To Compel

Incorporating each of these "general objections," Defendants then purport to state the following "further" objections to the Requests in issue, refusing to produce any of the requested documents or otherwise claiming no responsive documents exist:[4]

### RESPONSE TO REQUEST NO. 4:

Defendant incorporates each and every one of its general objections. After a diligent search and reasonable inquiry, defendant is unable to identify any responsive documents other than those already contained in the hearing record or the record of this litigation to date.

### RESPONSE TO REQUEST NO. 5:

Defendant incorporates each and every one of its general objections. After a diligent search and reasonable inquiry, defendant is unable to identify any responsive documents other than those already contained in the hearing record or the record of this litigation to date. In addition, ATF personnel identified themselves to plaintiff during each point of contact on plaintiff's premises.

### RESPONSE TO REQUEST NO. 6:

Defendant incorporates each and every one of its general objections. Defendant identifies the memorandum issued by Mr. Schnabel, which will be the subject of the motion for protective order scheduled at the June 20, 2006 case management conference. There are no other documents other than communications between defendant and its attorneys during the pendency of the litigation that are potentially relevant to this dispute.

### RESPONSE TO REQUEST NO. 17:

Defendant incorporates each and every one of its general objections. Further objection: this request violates the attorney-client privilege. After diligent search and reasonable inquiry, defendant is unable to identify any responsive document.

As explained below, each of Defendants' objections are unfounded and must be overruled. The Court should therefore order the requested documents produced on an expedited basis to permit TRADER SPORTS the opportunity to discover the requested information sufficiently in advance of its anticipated

---

[4] Since the time Defendants' Response was served, they have indicated that they will produce documents, but have not indicated what documents they will produce.

summary judgment motion currently due to be filed on or before September 7, 2006.

## ARGUMENT

### A. THE REQUESTED DOCUMENTS ARE RELEVANT TO TRADER SPORTS' CLAIMS, ARE REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE, AND FALL WITHIN THE PERMISSIBLE SCOPE OF THE DISCOVERY ACT.

As a starting point, Defendants' inferential assertion they are not obligated to respond to discovery under the Federal Rules of Civil Procedure or that the federal discovery rules do not apply to them or impose an unfair burden is fallacious. When the government is a litigant, it is placed in the same position as a private litigant, and the rules of discovery dictated by the Federal Rules of Civil Procedure apply. *See United States v. Procter & Gamble Co.*, 356 U.S. 677, 681, (1958) ("The Government as a litigant is, of course, subject to the rules of discovery").

Under the Federal Rules of Civil Procedure, a party to a civil action has the inherent statutory right to discover "any matter, not privileged, that is relevant to the claim or defense of any party," irrespective of the other party's perception of the merits of the claim. *FRCP 26(b)(1)*. Whether the information sought would be admissible evidence at trial is not the test; information is discoverable if it "appears reasonably calculated to lead to the discovery of admissible evidence." *FRCP 26(b)(1)*.

The documents requested by TRADER SPORTS meet these standards. Diary entries prepared by BATFE inspectors during their on-site inspections were expressly relied upon by Defendants in the declarations of BATFE Inspectors Francis Irving, Jun Tucay and Ronald Borg for the purpose of refuting TRADER SPORTS' claimed violation of the "one time in twelve months inspection rule" at both the administrative hearing and in this Court; and, any notes taken by BATFE inspectors during the course of the BATFE's on-site inspections of TRADER

SPORTS conducted in 2000, 2002 and 2003 (Request No. 4) are critical to the timing issues raised with respect to the start and end of each of these respective inspections. They provide the only known contemporaneous record both with respect to the duration of the inspection period and the activity of the inspectors in each instance.[5]

Similarly, work schedules and other records that identify BATFE personnel present at any time during the on-site inspections of TRADER SPORTS, including any Closing Conferences with respect to the 2002 and 2003 inspections (Request No. 5), provide the only known records identifying the participants in each of these inspections. The identity of the inspectors who participated in the inspections will invariably aid TRADER SPORTS in assessing and presenting the timing of the start and end of each of these inspections and to demonstrate that the Closing Conference is indeed an active and essential part of the inspection process.[6]

---

[5] Defendants' response that they are "unable to identify any responsive documents other than those already contained in the hearing record or the record of this litigation to date" is belied by the record. The inspectors' notes and diaries were never entered in the hearing record or the record in this court. They must be presumed to exist since the inspectors each affirmed under penalty of perjury in their respective declarations that they examined their own diaries and notes to prepare the declarations.

[6] Defendants' response that they are "unable to identify any responsive documents other than those already contained in the hearing record or the record of this litigation to date," and that "ATF personnel identified themselves to plaintiff during each point of contact on plaintiff's premises" are non-sequiturs. As the hearing record reveals, the 2003 inspection was unprecedented in its size and scope, and was conducted by inspectors from all over Northern California and Nevada in a coordinated effort initiated by the BATFE. Under circumstances where multiple inspectors were literally coming and going, it is entirely unreasonable for Defendants to assign TRADER SPORTS with the burden of keeping track of the identity of each of the inspectors when Defendants can simply examine its own records in a matter of minutes. Further, contrary to Defendants' assertion, the identity of <u>all</u> inspectors participating in the 2002 and 2003 inspection of TRADER SPORTS, including the Closing Conference

Documents relating to any communications between Defendants and the California Department of Justice concerning any request that the Department perform an on-site inspection of Plaintiff in January 2004 (Request No. 17) are clearly relevant and are likely to lead to the discovery of admissible evidence with respect to the factual question of whether Defendants violated the "one time in twelve months inspection rule" yet again, after the 2003 inspection had ended. It will lead to evidence which will demonstrate that Defendants were aware that they were utilizing the State inspectors as surrogates to conduct additional inspections for the purpose of gathering evidence for the pending administrative process.[7]

Finally, BATFE internal memoranda, directives, manuals, or similar federal registry entries or comments that memorialize Defendants' interpretation or application of the "one time in twelve months inspection rule" enacted by Congress, including a complete copy of the BATFE's Memorandum entitled "Annual Right of Entry for Federal Firearms Licensee Annual Inspection" expressly relied upon by Defendants and the Hearing Officer (Request No. 6) are directly relevant to Defendant's well-articulated defense. Defendants assert that the twelve month inspection period specified by Congress runs from the date the prior inspection commenced, rather than ended; and, that this statutory interpretation is entitled to administrative deference, is not arbitrary or capricious, and that any violation of the statutory "one time in twelve months inspection rule,"

---

conducted in 2002, is not contained within the administrative record.

[7] Defendants' response that they are "unable to identify any responsive document" must be viewed with skepticism. During a Closing Conference conducted by Department of Justice Field Inspector Dana McKinnon at TRADER SPORTS in October 2004 to discuss the results of an on-site compliance inspection of TRADER SPORTS conducted by Mr. McKinnon during January and February 2004, Mr. McKinnon unequivocally indicated the inspection was conducted at the request of the BATFE pursuant to a <u>written referral request</u> from the BATFE's Dublin, California office. *See, Exh. F, Reply Declaration of James P. Mayo Re Motion For Preliminary Injunction at ¶¶ 2.*

even if willful, does not mandate suppression of the inspection's results.

5 U.S.C. §§ 706(2)(A) & (D) provides the District Court with the power to set aside an agency action which it determines is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance procedure required by law." To make this determination when an administrative agency's action turns upon the construction of a statute, the reviewing Court must first consider whether the agency correctly interpreted and applied the statute. See, Bonnischen v. United States, 217 F.Supp.2d 1116, 1132 (D. Oregon 2002).

Here, the Memorandum, which purports to memorialize the BATFE's interpretation of the statute and which was explicitly relied upon by Defendants, the Hearing Officer, and the BATFE, is plainly relevant to the determination of whether the BATFE's interpretation of the statute was correct, and whether Defendants' conduct with respect to the 2003 inspection was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance procedure required by law" entitling TRADER SPORTS to suppression of the fruits of that inspection and a judgment setting aside the administrative revocation.[8] At the very least, the existence of the Memorandum

---

[8] The "one time in twelve months inspection rule" enacted by Congress provides a limited exception to the requirement that the BATFE otherwise obtain a warrant from a Magistrate. The notion that gun dealers are involved in a highly regulated industry, and thus subject to more frequent or warrantless administrative searches, or otherwise have a diminished expectation of privacy (as first expressed by the United States Supreme Court in United States v. Biswell, 406 U.S. 311 (1972)) has been expressly overridden by Congress in enacting the rule by reference to the Fourth Amendment in the Congressional record contemporaneous to the enactment of the FOPA. See, Complaint at ¶¶ 18-21 (discussing the Constitutional underpinnings of the rule as reflected in the Congressional Record). Thus, while the general rule is that violation of a statute alone will not support application of the Exclusionary Rule, Defendants' violation of the "one time in twelve months inspection rule" is not simply "precatory" because the statute itself is a codification of the Constitutional protections afforded by Fourth Amendment — i.e., that an inspection conducted without a

informs the conclusion that Defendants must have been concerned there was an issue and that their agents were violating the clear statutory limitation since, after many years, they suddenly issued a guidance memo on the subject purporting to clarify its interpretation of the statute. It should be ordered produced.

### B. DEFENDANTS' BLANKET CLAIMS OF PRIVILEGE ARE UNFOUNDED BECAUSE THEY HAVE PLACED THE REQUESTED DOCUMENTS IN ISSUE, HAVE WAIVED ANY CLAIMS OF PRIVILEGE, AND HAVE NOT PROVIDED A PRIVILEGE LOG.

In federal question cases such as the case at bench, privileges are determined under federal common law. *FRE 501; Admiral Ins. Co. v. United States Dist. Ct. for Dist. of Arizona*, 881 F.2d 1486, 1492 (9th Cir. 1989) (federal

---

warrant in violation of the temporal constraints imposed by the inspection rule is per se "unreasonable."

Further, since evidence seized during a BATFE inspection can be used to support a criminal violation of the Gun Control Act, and administrative revocation proceedings result in the loss of a valuable property right (the license), the Exclusionary Rule is applicable even though the underlying proceedings were administrative rather than criminal. Analyzing Supreme Court precedent, including *Calandra v. United States*, 414 U.S. 338, *Camara v. Municipal Court*, 387 U.S. 523 (1967), and *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, Professor LaFave has aptly summarized these principles at § 1.7(f), pp. 241 of his seminal treatise, *Search and Seizure*:

> "the exclusionary rule is to be applied to proceedings which are quasi-criminal in character" in that their object "is to penalize for the commission of an offense against the law," such as the loss of a license or one's livelihood;
>
> . . .
>
> the argument for exclusion (in an administrative context) is most compelling when the administrative agency . . . has an investigative function and investigative personnel of that agency participated in the illegal activity for the purpose of providing information to support administrative proceedings against the suspect."

common law attorney-client privilege applies in actions based on a federal claim); *Airheart v. Chicago & North Western Transp. Co.*, 128 FRD 669, 670 (D SD 1989) (attorney work product doctrine is not a privilege and is governed by federal law).

Under federal common law, the attorney-client privilege is waived when a party places an otherwise confidential communication as an issue in the case. *Chevron Corp. v. Penzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992). Similarly, a claim of work product protection may be waived by disclosure or other conduct, such as testimonial use of the materials. *United States v. Nobles*, 422 U.S. 225, 239 (1975).

When information is withheld on the basis of a privilege or work product protection, failure to make a proper objection is deemed to be a waiver of the claim of privilege. To properly invoke a claim of privilege, a party must: (1) expressly claim the privilege; and, (2) "describe the nature of the documents, communications, or things not produced or disclosed in a manner that . . . will enable other parties to assess the applicability of the privilege or protection." *FRCP 26(b)(5)*. Boilerplate objections or blanket assertions of privilege are insufficient to sustain an objection. *Burlington Northern & Santa Fe Ry. Corp. v. United States Dist. Ct. for Dist. of Montana*, 408 F.3d 1142, 1148 (9th Cir. 2005).

Applying these principles, Defendants' objections on the claimed bases of attorney-client and work-product privilege must be overruled. Even assuming the attorney-client or work-product privileges apply (they do not, nor have Defendants made such a specific showing or otherwise provided a privilege log as required by Rule 26(b)(5) of the Federal Rules of Civil Procedure), Defendants have waived any such privilege by squarely placing <u>each</u> of the requested documents in issue at the administrative level, and by now relying upon those very same

documents in defense of that record.[9] TRADER SPORTS' narrowly-focused Requests are undeniably relevant to its centerpiece claim that Defendants violated the "one time in twelve months inspection rule," and fundamental fairness dictates that the documents be produced irrespective of Defendants' unsubstantiated blanket claims of privilege.

## CONCLUSION

An order compelling a production of documents is appropriate where the responding party has responded to the request but has interposed unfounded objections or makes incomplete or evasive responses. *FRCP 34(b)*. Those criteria have been met here. By their Response, Defendants have proffered only unfounded, incomplete and evasive objections. The Court should therefore order the requested documents produced and award TRADER SPORTS expenses incurred in bringing this motion, including attorney fees.

Dated: July 20, 2006                **SEGAL & KIRBY**

By: _____
MALCOLM S. SEGAL
Attorneys for Plaintiff
TRADER SPORTS, INC.

---

[9] Defendants' assertion of the attorney-client privilege with respect to TRADER SPORTS' request for documents relating to communications between Defendants and the California Department of Justice concerning any request that the Department perform an on-site inspection of Plaintiff in January 2004 (Request No. 17) is particularly revealing. Unless the Department of Justice was in fact conducting inspections at the direction of the BATFE as contended by TRADER SPORTS or acting as its surrogate, it defies logic for Defendants to assert the attorney-client privilege on behalf of an independent State agency with respect to communications between the two agencies.

Plaintiff's Memorandum of Points and Authorities Re Motion To Compel